UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Roy C. Chambers, Jr.,<br><br>     Plaintiff,<br><br>v.<br><br>State of Connecticut, *et al.*,<br><br>     Defendants. | Civil No. 3:24-cv-01454 (KAD)<br><br><br>November 18, 2024 |

**RECOMMENDED RULING ON MOTION FOR LEAVE TO PROCEED *IN FORMA PAUPERIS* AND INITIAL REVIEW UNDER 28 U.S.C. § 1915**

**I. INTRODUCTION**

  This is a lawsuit filed by the plaintiff, Roy Chambers, Jr., proceeding *pro se*, against the state of Connecticut; the city of Hartford, Connecticut; and various corporations that the plaintiff says designed, manufactured, marketed, distributed, or sold aqueous film forming foam ("AFFF"), polyfluoroalkyl substances ("PFAS"), and polychlorinated biphenyl ("PCB"). (Compl., ECF No. 1, 3–12.) The plaintiff appears to allege ten counts against the defendants, each revolving around the idea that the defendants knowingly manufactured dangerous chemicals that caused him harm. (*See id.* at 2, 17–21, 23–26, 36–40, 52.) He also seeks permission from the court to begin his lawsuit *in forma pauperis*, or "IFP." (ECF No. 2.)

  When a plaintiff wishes to proceed IFP – that is, without paying the filing fee – the court ordinarily conducts two inquiries. First, it reviews the plaintiff's financial affidavit and determines whether he is unable to pay the fee. 28 U.S.C. § 1915(a). Second, to ensure that the plaintiff is not abusing the privilege of filing a free lawsuit, the court examines his complaint to determine whether, among other things, it "is frivolous" or "fails to state a claim on which relief may be

1

granted." 28 U.S.C. §§ 1915(e)(2)(B)(i)-(ii). And in all cases – not just those that involve indigent *pro se* plaintiffs – the court must determine whether it has jurisdiction over the subject matter of the action. If the complaint is "frivolous" or "fails to state a claim," or if it fails to show that the court has jurisdiction, the court must dismiss the case. *Id.*

United States District Judge Kari A. Dooley referred this case to me – United States Magistrate Judge Thomas O. Farrish – to conduct these two inquiries. (ECF No. 8.) I have thoroughly reviewed the complaint, the IFP motion, and the accompanying financial affidavit. In the first step of the analysis, **I recommend that Judge Dooley deny the IFP motion** because Mr. Chambers has not sufficiently shown an inability to pay the filing fee. In the second step, **I recommend that Judge Dooley dismiss the complaint** because Mr. Chambers does not state a claim upon which relief can be granted and over which the court would have jurisdiction. I further recommend, however, that these actions be without prejudice to a revised IFP motion and an amended complaint.

## II.    THE FIRST INQUIRY – ENTITLEMENT TO IFP STATUS

Typically, when a plaintiff files a case in federal court, he must pay filing and administrative fees totaling $405.00. *See* 28 U.S.C. § 1914. A court may nonetheless "authorize the commencement . . . of any suit . . . without prepayment of fees . . . by a person who submits an affidavit that includes a statement of all assets such [person] possesses that the person is unable to pay such fees[.]" 28 U.S.C. § 1915(a)(1); *see also Coleman v. Tollefson*, 575 U.S. 532, 534 (2015) (stating that litigants who qualify for IFP status "may commence a civil action without prepaying fees").

To qualify as "unable to pay," the plaintiff does not have to demonstrate absolute destitution, *see Potnick v. E. State Hosp.*, 701 F.2d 243, 244 (2d Cir. 1983) (per curiam), but he

does need to show that "paying such fees would constitute a serious hardship[.]" *Fiebelkorn v. U.S.*, 77 Fed. Cl. 59, 62 (2007). The United States Supreme Court has said that a plaintiff makes a "sufficient" showing of inability to pay when his application demonstrates that he "cannot because of his poverty pay or give security for the costs and still be able to provide himself and [his] dependents with the necessities of life." *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948).

In determining whether a plaintiff's financial circumstances meet these standards, courts consider not only his personal resources, but also the resources of anyone who supports him. *See, e.g.*, *Fridman v. City of N.Y.*, 195 F. Supp. 2d 534, 537 (S.D.N.Y. 2002) ("In assessing an application to proceed in forma pauperis, a court may consider the resources that the applicant has or can get from those who ordinarily provide the applicant with the necessities of life, such as from a spouse, parent, adult sibling or other next friend.") (internal quotation marks and citations omitted); *Monti v. McKeon*, 600 F. Supp. 112, 114 (D. Conn. 1984), *aff'd*, 788 F.2d 1 (2d Cir. 1985) (table decision). In other words, "[w]here a litigant is supported or assisted by another person, the [c]ourt may consider that person's ability to pay the filing fee." *Pierre v. City of Rochester*, No. 6:16-cv-06428 (CJS), 2018 WL 10072449, at *1 (W.D.N.Y. Dec. 13, 2018).

In his IFP affidavit, Mr. Chambers claims to have earned no income since at least April of 2018. (ECF No. 2, at 3.) He also claims to have $0.00 in cash on hand or in a bank account, and he says that he does not own anything of value. (*Id.* at 4.) He further claims that he and his family have no monthly expenses and no debts. (*Id.*) Mr. Chambers does, however, state in a different section of the form that his father lives in his household and pays the rent on the home. (*Id.* at 3.)

Because Mr. Chambers is supported by his father, at least with respect to rent payments, the Court may consider his father's ability to pay the filing fee. *See Fridman*, 195 F. Supp. 2d at

537. Mr. Chambers' application, however, does not provide information about the financial resources of his father. Without that information, the Court cannot determine whether Mr. Chambers meets the standard for proceeding IFP. Accordingly, I recommend that Mr. Chambers' motion for leave to proceed IFP be denied, without prejudice to refiling.

### III.    THE SECOND INQUIRY – "FRIVOLOUS" OR "FAILS TO STATE A CLAIM"

Although Mr. Chambers' IFP motion fails the first inquiry, I will nevertheless proceed to the second inquiry in the interest of judicial efficiency. *See, e.g.*, *Franklin v. Chenango Cnty. Pub. Defender's Office*, No. 3:18-cv-00865 (BKS) (DEP), 2018 WL 4288620, at *2 (N.D.N.Y. Sept. 7, 2018) (conducting 28 U.S.C. § 1915(e) analysis even though *in forma pauperis* motion denied).

#### A.    General Principles of Review under 28 U.S.C. § 1915

The same statute that authorizes courts to allow a qualifying plaintiff to begin his lawsuit without paying the fee also directs courts to review that plaintiff's complaint to ensure he is not abusing the privilege of filing a free lawsuit. As noted above, that review asks whether the plaintiff's complaint "is frivolous" or "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B). A complaint is "frivolous" within the meaning of the statute when, among other things, it "has no arguable basis in law or fact" or "is based on an indisputably meritless legal theory." *Montero v. Travis*, 171 F.3d 757, 759 (2d Cir. 1999) (quoting *Neitzke v. Williams*, 490 U.S. 319 (1989)) (quotation marks omitted). A complaint "fails to state a claim on which relief can be granted" when it lacks "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Although detailed allegations are not

required, the complaint must include sufficient facts to afford the defendant fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Twombly*, 550 U.S. at 555–56. Conclusory allegations are insufficient. *Iqbal*, 556 U.S. at 678. If a complaint is frivolous or fails to state a claim, the Court "shall dismiss the case." 28 U.S.C. § 1915(e)(2).

These and other pleading rules are applied liberally in favor of *pro se* plaintiffs like Mr. Chambers. "Since most *pro se* plaintiffs lack familiarity with the formalities of pleading requirements," courts must "construe *pro se* complaints liberally, applying a more flexible standard to evaluate their sufficiency than we would when reviewing a complaint submitted by counsel." *Lerman v. Bd. of Elections*, 232 F.3d 135, 139–40 (2d Cir. 2000). In other words, courts interpret *pro se* complaints "to raise the strongest arguments that they suggest." *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006) (internal quotation marks omitted). Because *pro se* litigants "cannot be expected to know all of the legal theories on which they might ultimately recover," a reviewing court's "imagination should be limited only by [the] factual allegations" when determining what legal claims the complaint suggests. *Phillips v. Girdich*, 408 F.3d 124, 130 (2d Cir. 2005). At the same time, "[e]ven a *pro se* plaintiff . . . must meet the standard of facial plausibility[.]" *McQuay v. Pelkey*, No. 3:16-cv-00436 (MPS), 2017 WL 2174403, at *2 (D. Conn. May 17, 2017); *accord Vega v. Univ. of Conn. Med. Ctr.*, No. 3:11-cv-01864 (AVC), 2012 WL 1825381, at *1 (D. Conn. May 16, 2012) ("Although courts still have an obligation to liberally construe a *pro se* complaint, the complaint must include sufficient factual allegations to meet the standard of facial plausibility.") (internal citation omitted).

B.  **Subject Matter Jurisdiction**

Before applying those principles to the complaint, the Court must first determine whether it has subject matter jurisdiction – that is, whether each of Mr. Chambers' claims is the sort of

claim that the court is empowered to hear. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Federal courts are courts of "limited jurisdiction," meaning that they cannot hear just any case. *Id.* Leaving aside some others that are not relevant here, a federal court can typically adjudicate only three types of claims: (1) those that "aris[e] under the Constitution, laws, or treaties of the United States" – so-called "federal question" jurisdiction under 28 U.S.C. § 1331; (2) disputes between citizens of different states, where the amount in controversy exceeds $75,000 – "diversity jurisdiction" under 28 U.S.C. § 1332; and, under certain circumstances, (3) other claims that are "so related" to an "original jurisdiction" claim that they "form part of the same case or controversy under Article III of the United States Constitution" – "supplemental jurisdiction" under 28 U.S.C. 1367(a).

When the plaintiff's complaint is not the sort of complaint that the court is empowered to hear, dismissal is required. Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Yong Qin Luo v. Mikel*, 625 F.3d 772, 775 (2d Cir. 2010) (per curiam) ("Where jurisdiction is lacking . . . dismissal is mandatory.") (internal quotation marks omitted). Moreover, when subject matter jurisdiction is lacking, the complaint must be dismissed even if it was drafted by a *pro se* plaintiff. *See, e.g.*, *Rene v. Citibank N.A.*, 32 F. Supp. 2d 539, 541 (E.D.N.Y. 1999); *cf. Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000) (placing the burden of proving subject matter jurisdiction on the *pro se* plaintiff). In other words, while *pro se* complaints are reviewed liberally, that liberality does not stretch so far as to cause a court to hear a case that is outside its jurisdiction. *Cf. Makarova*, 201 F.3d at 113; *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) (concluding that *pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") (internal quotation marks omitted). When reviewed liberally, Mr. Chambers' complaint seeks to

invoke the court's diversity jurisdiction, federal question jurisdiction, and supplemental jurisdiction. Accordingly, the Court will discuss each in turn.

### 1. *Diversity jurisdiction*

Under 28 U.S.C. § 1332, diversity jurisdiction does not exist unless two principal requirements have been met. The first is that the "matter in controversy" must exceed "the sum or value of $75,000, exclusive of interest and costs[.]" 28 U.S.C. § 1332(a). In the context of this case, the second is that the dispute must be "between . . . citizens of different States[.]" *Id.* To satisfy the second requirement in a multi-defendant case, it is not enough that one defendant be a citizen of a different state than the plaintiff. Rather, "all plaintiffs must be citizens of states diverse from those of all defendants." *Pa. Public School Emps. Retirement Sys. v. Morgan Stanley & Co., Inc.*, 772 F.3d 111, 118 (2d Cir. 2014) (citing *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553 (2005). The party seeking to invoke diversity jurisdiction – in this case, Mr. Chambers – bears the burden to show that both requirements have been satisfied. *See Advani Enters., Inc. v. Underwriters at Lloyds*, 140 F.3d 157, 160 (2d Cir. 1998) ("The party seeking to invoke jurisdiction under 28 U.S.C. § 1332 bears the burden of demonstrating that the grounds for diversity exist and that diversity is complete.").

To show that a dispute is between citizens of different states, a plaintiff must allege different facts depending on the type of citizen involved. A corporation is "deemed to be a citizen of every State . . . by which it has been incorporated and of the State . . . where it has its principal place of business." 28 U.S.C. § 1332(c)(1). The corporation's "principal place of business" is "the place where the corporation's high level officers direct, control, and coordinate [its] activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 80 (2010).

A natural person "is deemed a citizen of the state wherein he . . . is domiciled." *Universal Reins. Co. v. St. Paul Fire & Mar. Ins. Co.*, 224 F.3d 139, 141 (2d Cir. 2000) (citing *Linardos v. Fortuna*, 157 F.3d 945, 948 (2d Cir. 1998)). A person's state of domicile is not necessarily his state of residence. "Domicile has been described as the place where a person has 'his true fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning.'" *Linardos*, 157 F.3d at 948 (quoting 13B C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 3612, at 526 (2d ed. 1984)).

In this case, Mr. Chambers' complaint does not allege facts sufficient to satisfy the diversity-of-citizenship requirement. Mr. Chambers states that he is a citizen of Connecticut. (Compl., ECF No. 1, at 1.) But he also states that two of the defendants – the State of Connecticut and the city of Hartford – are citizens of Connecticut. (*Id.* at 1, 13.) As discussed, to invoke this court's diversity jurisdiction, no plaintiff and no defendant can be citizens of the same state. *Platinum-Montaur Life Scis., LLC v. Navidea Biopharm., Inc.*, 943 F.3d 613, 617 (2d Cir. 2019) (quoting *Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 388 (1998)). Because Mr. Chambers and two of the defendants are citizens of Connecticut, Mr. Chambers has not invoked the court's diversity jurisdiction.

### 2. *Federal question jurisdiction*

Federal courts have federal question jurisdiction when the action "aris[es] under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. In order "to determine whether the claim arises under federal law, [courts] examine the 'well pleaded' allegations of the complaint." *Bank of New York v. Consiglio*, No. 3:17-cv-01408 (CSH), 2017 WL 9480197, at *4 (D. Conn. Oct. 2, 2017) (quoting *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 6 (2003)), *report and recommendation adopted*, 2017 WL 4948069 (D. Conn. Nov. 1, 2017).

As discussed further in Part C of this section, the Court construes Mr. Chambers' complaint to seek relief under three federal laws – the Americans with Disabilities Act ("ADA"), the Rehabilitation Act, and the Federal Tort Claims Act ("FTCA") – and under the United States Constitution pursuant to 42 U.S.C. § 1983. Although there are issues with the pleading of each of these claims, only one has a jurisdictional issue, the FTCA claims.

The FTCA allows litigants to sue the United States for certain torts committed by federal employees. *See F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). Courts can only exercise jurisdiction over an action brought pursuant to the FTCA if the United States is the defendant. *See* 28 U.S.C. § 1346(b)(1); *Brownback v. King*, 592 U.S. 209, 217 (2021) ("[A] plaintiff must plausibly allege all jurisdictional elements" to establish subject matter jurisdiction and "in the unique context of the FTCA, all elements of a meritorious claim are also jurisdictional."); *Meyer*, 510 U.S. at 477 (stating that elements of an FTCA claim include that the action was filed "against the United States"). Because Mr. Chambers has not named the United States as a defendant in this case, the court does not have subject matter jurisdiction over the negligence and intentional infliction of emotional distress ("IIED") claims that Mr. Chambers filed pursuant to the FTCA. With respect to the remaining federal claims, the Court finds no jurisdictional defects. Nonetheless, for the reasons discussed below, I recommend that each of them be dismissed for failure to state a claim.

### 3. *Supplemental jurisdiction*

Finally, because Mr. Chambers' complaint contains state-law claims, the Court must assess whether it has supplemental jurisdiction over them; that is, whether the court can still hear the claims even though they do not invoke diversity jurisdiction or federal question jurisdiction. 28 U.S.C. § 1367 provides that, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all claims that are so

related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Put differently, "a federal court has jurisdiction over an entire action, including state-law claims, whenever the federal-law claims and state-law claims in the case 'derive from a common nucleus of operative fact' and are 'such that a plaintiff would ordinarily be expected to try them all in one judicial proceeding.'" *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 349 (1988) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)) (brackets omitted). However, a federal court "may decline to exercise supplemental jurisdiction" under various circumstances, including when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); *Cohill*, 484 U.S. at 350 n.7 ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims."). As discussed below, because I recommend dismissal of Mr. Chambers' federal-law claims, I also recommend that Judge Dooley decline to exercise supplemental jurisdiction over Mr. Chambers' state-law claims.

      **C.**      **Application of These Principles to Mr. Chambers' Claims**

Construing the complaint liberally, Mr. Chambers appears to assert claims under (1) Titles I through IV of the ADA (Compl., ECF No. 1, at 2, 17, 37–40, 52); (2) the Rehabilitation Act (*id.* at 2, 17, 36, 52); (3) the Eighth Amendment to the United States Constitution pursuant to 42 U.S.C. § 1983 (*id.* at 2, 17, 21, 23); and (4) the FTCA. (*Id.* at 2, 18–20.) He also appears to allege state-law claims for products liability, IIED, and professional malpractice. (*Id.* at 2, 18–20.) Having already recommended dismissal of the claims brought under the FTCA for lack of subject matter jurisdiction, I will now discuss each of the remaining claims.

*1.     The ADA claims*

The ADA protects against discrimination based upon disability with respect to, among other things, employment, public entities, public accommodations, and telecommunications. 42 U.S.C. §§ 12101 *et seq.*; *see Furst v. Connecticut*, No. 3:23-cv-00569 (KAD), 2023 WL 11852428, at *5 (D. Conn. June 12, 2023). Mr. Chambers alleges that the defendants have violated Titles I through IV of the ADA by "creat[ing] hardships in employment practices towards [him] and prohibit[ing] the reasonable accommodations [that he] needs." (Compl., ECF No. 1, at 37.) He further alleges that the city of Hartford and the state of Connecticut have not made renovations to their public buildings to be compliant with the ADA, which has allowed the damaging effects of AFFF, PFAS, and PCB to continue. (*Id.* at 37–38.) Even when read liberally, Mr. Chambers' complaint has failed to state an ADA claim.

Title I of the ADA provides a remedy for disability discrimination committed by "an employer, employment agency, labor organization, or joint labor-management committee." 42 U.S.C. § 12111(2). Mr. Chambers has not alleged in his complaint that he was employed by any of the defendants. His claim under Title I of the ADA, therefore, must fail. *Aquino v. Prudential Life & Cas. Ins. Co.*, 419 F. Supp. 2d 259, 276 (E.D.N.Y. 2005) ("Because the Plaintiff has not alleged that an employment relationship existed, the complaint must be dismissed for failure to state a claim.")

To state a claim under Title II of the ADA, a plaintiff must plead facts that, if proven, would show that (1) he is a qualified individual with a disability; (2) the defendant is a public entity subject to the acts; and (3) he was denied the opportunity to participate in or benefit from the defendant's services, programs, or activities or the defendant otherwise discriminated against him by reason of his disability. *Wright v. New York State Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir.

2016). Mr. Chambers has not plausibly pled sufficient facts to establish the elements of a Title II claim. Even when liberally construed, the complaint makes no assertion that Mr. Chambers was denied the benefit of any public services, programs, or activities by reason of a disability. Accordingly, the complaint fails to state a claim under Title II of the ADA. *See, e.g.*, *Chavous v. Hous. Visions Unlimited, Inc.*, No. 5:22-cv-00811 (LEK) (TWD), 2022 WL 9967833, at *4 (N.D.N.Y. Oct. 17, 2022) (concluding that the plaintiff had failed to state a claim under Title II of the ADA because the complaint was, among other things, "devoid of factual allegations plausibly suggesting [the plaintiff] was unable to access public programs due to her disability"), *report and recommendation adopted*, No. 5:22-cv-00811 (AMN) (TWD), 2023 WL 1775699 (N.D.N.Y. Feb. 6, 2023).

Mr. Chambers has also failed to plausibly plead sufficient facts to state a claim under Title III of the ADA. To state such a claim, a plaintiff must plead facts that, if proven, would show that (1) he is disabled within the meaning of the ADA; (2) the defendants own, lease, or operate a place of public accommodation; and (3) the defendants discriminated against him within the meaning of the ADA. *Krist v. Kolombos Rest. Inc.*, 688 F.3d 89, 94–95 (2d Cir. 2012). Claims under Title III "can only be asserted against a private entity engaged in the provision of public accommodations, such as an inn, hotel or private school. . . . Title III is not applicable to public entities." *Morales v. New York*, 22 F. Supp. 3d 256, 266 (S.D.N.Y. 2014) (citing 42 U.S.C. §§ 12181(7), 12182). Mr. Chambers makes no assertion that any of the defendants are a private entity engaged in the provision of public accommodations. Indeed, none of the defendants named by Mr. Chambers is an inn, hotel, restaurant, theater, grocery store, museum, or any similar private entity. *See* 42 U.S.C. § 12181 (7). Accordingly, Mr. Chambers has failed to state a claim under Title III of the ADA. *Dow v. M & T Bank*, No. 6:16-cv-00514 (DNH) (TWD), 2016 WL 10835986, at *5

(N.D.N.Y. May 24, 2016) (concluding that the plaintiffs had failed to state a claim under Title III of the ADA because there was "no public accommodation, as defined in the ADA, involved in [the] case"), *report and recommendation adopted sub nom. Dow v. M & T Bank, Mortg. Co.*, No. 6:16-cv-00514, 2018 WL 626292 (N.D.N.Y. Jan. 30, 2018).

Finally, Title IV of the ADA prohibits discrimination based on disability in telecommunications. *See* 47 U.S.C. § 225; *Genco v. Sargent & Collins LLP*, 1:18-cv-00107 (LJV) (MJR), 2018 WL 3827742, at *3 n.5 (W.D.N.Y. June 4, 2018). It requires telecommunication companies to provide services to accommodate consumers with, among other things, hearing and speech impairments. *See* 47 U.S.C. § 225. With respect to his Title IV claim, Mr. Chambers states only that the defendants knew that AFFF, PCB, and PFAS could "cause many forms of impairments and delayed communications." (Compl., ECF No. 1, at 40.) Mr. Chambers does not allege that the defendants failed to accommodate a hearing or speech impairment and, even if he had, the defendants are not telecommunication companies. Accordingly, Mr. Chambers does not state a claim for violation of Title IV of the ADA. I therefore recommend that Judge Dooley dismiss each of the claims under the ADA for failure to state a claim upon which relief can be granted.

### 2. *The Rehabilitation Act claim*

Mr. Chambers next alleges that the defendants violated the Rehabilitation Act. The Rehabilitation Act protects disabled individuals from discrimination by employers, programs, or activities that receive financial assistance from the federal government. *See* 29 U.S.C. § 794(a). With respect to disability discrimination by employers, a plaintiff must plead the following to state a claim under the Rehabilitation Act: "(1) he is handicapped or disabled under the Act; (2) he is otherwise qualified to perform his job; (3) he suffered an adverse employment action solely due to

his disability; and (4) the employer is a recipient of Federal financial assistance." *Gentile v. Potter*, 509 F. Supp. 2d 221, 235 (E.D.N.Y. 2007) (citing *Heilweil v. Mount Sinai Hosp.*, 32 F.3d 718, 722 (2d Cir. 1994)).  Mr. Chambers has not alleged in his complaint that he was employed by any of the defendants.  His claim as to disability discrimination by employers under the Rehabilitation Act, therefore, must fail.

With respect to disability discrimination in programs or activities, a plaintiff "must allege '(1) that he is a "qualified individual" with a disability; (2) that he was excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by a public entity; and (3) that such exclusion or discrimination was due to his disability.'" *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009) (quoting *Hargrave v. Vermont*, 340 F.3d 27, 34–35 (2d Cir. 2003)).  Even when viewed liberally, Mr. Chambers' complaint has not plausibly alleged that he was excluded from participation in any sort of service, program, or activity.  For these reasons, his Rehabilitation Act claim should be dismissed.

### 3. Section 1983 claim

Mr. Chambers next attempts to bring a claim under 42 U.S.C. § 1983.  To make a claim under § 1983, a plaintiff must allege that a person acting under color of state law deprived him of a right, privilege, or immunity secured by the Constitution or laws of the United States.  *Whalen v. Cnty. of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997).  In this case, Mr. Chambers alleges Eighth Amendment violations, which prohibits the infliction of "cruel and unusual punishments" on those convicted of crimes.  *See* U.S. Const. amend. VIII; *Wilson v. Seiter*, 501 U.S. 294, 296–97 (1991).  Indeed, "the Eighth Amendment applies only to convicted prisoners."  *Simpson v. Town of Warwick Police Dep't.*, 159 F. Supp. 3d 419, 443 (S.D.N.Y. 2016) (citing *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983)).  Mr. Chambers, however, does not allege facts suggesting

that he was convicted of a crime and that a punishment was inflicted on him by the government. The Eighth Amendment claim should therefore be dismissed.

### 4. *Remaining state-law claims*

Reviewing Mr. Chambers' complaint liberally, the remaining claims appear to be state-law claims for products liability, IIED, and professional malpractice. As discussed in Section III.B of this recommended ruling, the Court does not have diversity jurisdiction and, therefore, it can only handle state-law claims if (a) at least one federal claim survives, and (b) the state-law claims meet the requirements of supplemental jurisdiction. However, because I recommend that Judge Dooley dismiss all the federal-law claims over which the court has original jurisdiction, I also recommend that she decline to exercise supplemental jurisdiction over the remaining state-law claims. *See* 28 U.S.C. § 1367(c)(3). When deciding whether to exercise supplemental jurisdiction, courts consider "the values of judicial economy, convenience, fairness, and comity[.]" *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 117–18 (2d Cir. 2013) (citation omitted). Having concluded that Mr. Chambers has failed to plausibly allege a viable federal claim, however, these values "militate against the exercise of supplemental jurisdiction." *Kulmann v. Biolo*, No. 3:24-cv-01077 (MPS), 2024 WL 3988255, at *6 (D. Conn. Aug. 29, 2024). Accordingly, I recommend that Judge Dooley decline to exercise supplemental jurisdiction over Mr. Chambers' state-law claims.

## IV. CONCLUSION

In sum, I recommend that Judge Dooley deny without prejudice Mr. Chambers' motion for leave to proceed *in forma pauperis*. I also recommend that all of Mr. Chambers' claims be dismissed without prejudice to repleading. If my recommendation is accepted, this would mean that Mr. Chambers could (a) file another motion for leave to proceed IFP, this time fully and

carefully completing the form and including the financial resources of anyone who supports him; and (b) file an amended complaint curing the defects discussed in this recommended ruling – in other words, an amended complaint that demonstrates the court's jurisdiction, and that contains enough factual material to permit the reasonable inference that each defendant he includes is liable to him for the misconduct that he alleges.  *See, e.g., Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (observing that *pro se* plaintiffs are often permitted "leave to amend at least once").

This is a recommended ruling by a magistrate judge.  Fed. R. Civ. P. 72(b)(1); D. Conn. L. Civ. R. 72.1(C).  **If the Plaintiff wishes to object to my recommendation, he must file that objection with the Clerk of the Court by December 9, 2024.**  *See* Fed. R. Civ. P. 72(b)(2) (stating that objections to magistrate judge recommendations shall be filed within fourteen days); D. Conn. L. Civ. R. 72.2(a) (allowing five additional days for persons who, like Mr. Chambers, will receive the recommendation from the Clerk of the Court via mail); Fed. R. Civ. P. 6(a)(1)(C) (stating that, when a deadline falls on a weekend or holiday, "the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday").  If he fails to file a timely objection, his failure "operates as a waiver of any further judicial review[.]" *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).  In particular, failure to file a timely objection operates as a waiver of the right to seek appellate review in the Court of Appeals. *Id.*; *see also* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. 6; *see also Impala v. U.S. Dep't of Justice*, 670 F. App'x 32 (2d Cir. 2016) (summary order).

                                              */s/ Thomas O. Farrish*
                                              Hon. Thomas O. Farrish
                                              United States Magistrate Judge