## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| Roy C. Chambers, Jr., | |
| Plaintiff, | Civil No. 3:24-cv-01454 (KAD) |
| v. | |
| State of Connecticut, *et al.*, | May 7, 2025 |
| Defendants. | |

## RECOMMENDED RULING ON RENEWED MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS AND INITIAL REVIEW OF THE AMENDED COMPLAINT UNDER 28 U.S.C. § 1915

### I.    INTRODUCTION

This is a lawsuit filed by the plaintiff, Roy Chambers, Jr., proceeding *pro se*, against thirty-two corporations that the plaintiff says designed, manufactured, marketed, distributed, and sold polyfluoroalkyl substances ("PFAS").  (Am. Compl., ECF No. 13, at 4–12.)  Mr. Chambers' original complaint having been dismissed for failure to state a claim upon which relief can be granted and lack of subject matter jurisdiction, he now appears to allege in an amended complaint six counts against the defendants, each revolving around the idea that they knowingly manufactured dangerous chemicals that caused him harm.  (*See id.* at 37–38, 42, 44, 46, 53.)  He has also renewed his motion seeking permission from the court to begin his lawsuit *in forma pauperis*, or "IFP." (ECF No. 14.)

As explained in the Court's recommended ruling concerning Mr. Chambers' original IFP motion (ECF No. 10), when a plaintiff wishes to proceed IFP – that is, without paying the filing fee – the court ordinarily conducts two inquiries.  First, it reviews the plaintiff's financial affidavit and determines whether he is unable to pay the fee.  28 U.S.C. § 1915(a).  Second, to ensure that

the plaintiff is not abusing the privilege of filing a free lawsuit, the court examines his complaint to determine whether, among other things, it "fails to state a claim on which relief may be granted." 28 U.S.C. §§ 1915(e)(2)(B).  And in all cases – not just those that involve indigent *pro se* plaintiffs – the court must determine whether it has jurisdiction over the subject matter of the action.  If the complaint "fails to state a claim," or if it fails to show that the court has jurisdiction, the court must dismiss the case.  *Id.*

United States District Judge Kari A. Dooley referred this case to me – United States Magistrate Judge Thomas O. Farrish – to conduct these two inquiries with respect to the plaintiff's original IFP motion and complaint.  (ECF No. 8.)  I recommended that Judge Dooley deny Mr. Chambers' IFP motion without prejudice to refiling and dismiss the complaint without prejudice to repleading.  (ECF No. 10.)  Mr. Chambers timely objected to the recommended ruling (ECF No. 11), but Judge Dooley accepted and adopted the recommendation, providing leave to Mr. Chambers to file an amended complaint and renewed IFP motion by March 4, 2025.  (ECF No. 12.)  Although Mr. Chambers did not timely file these documents, Judge Dooley directed the Clerk of the Court to reopen the case.  (ECF No. 15.)

Judge Dooley then referred the case to me to again conduct the two inquiries pursuant to 28 U.S.C. § 1915.  I have thoroughly reviewed the amended complaint, the renewed IFP motion, and the accompanying financial affidavit.  In the first step of the analysis**, I recommend that Judge Dooley deny the IFP motion** because Mr. Chambers has still not sufficiently shown an inability to pay the filing fee.  In the second step, **I recommend that Judge Dooley dismiss the complaint** because Mr. Chambers does not state a claim upon which relief can be granted and over which the court would have jurisdiction.

## II.    THE FIRST INQUIRY – ENTITLEMENT TO IFP STATUS

Typically, when a plaintiff files a case in federal court, he must pay filing and administrative fees totaling $405.00.  *See* 28 U.S.C. § 1914.  A court may nonetheless "authorize the commencement . . . of any suit . . . without prepayment of fees . . . by a person who submits an affidavit that includes a statement of all assets such [person] possesses that the person is unable to pay such fees[.]" 28 U.S.C. § 1915(a)(1); *see also Coleman v. Tollefson*, 575 U.S. 532, 534 (2015) (stating that litigants who qualify for IFP status "may commence a civil action without prepaying fees").

To qualify as "unable to pay," the plaintiff does not have to demonstrate absolute destitution, *see Potnick v. E. State Hosp.*, 701 F.2d 243, 244 (2d Cir. 1983) (per curiam), but he does need to show that "paying such fees would constitute a serious hardship[.]" *Fiebelkorn v. U.S.*, 77 Fed. Cl. 59, 62 (2007).  The United States Supreme Court has said that a plaintiff makes a "sufficient" showing of inability to pay when his application demonstrates that he "cannot because of his poverty pay or give security for the costs and still be able to provide himself and [his] dependents with the necessities of life."  *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948).

In determining whether a plaintiff's financial circumstances meet these standards, courts consider not only his personal resources, but also the resources of anyone who supports him.  *See, e.g., Fridman v. City of N.Y.*, 195 F. Supp. 2d 534, 537 (S.D.N.Y. 2002) ("In assessing an application to proceed *in forma pauperis*, a court may consider the resources that the applicant has or can get from those who ordinarily provide the applicant with the necessities of life, such as from a spouse, parent, adult sibling or other next friend.") (internal quotation marks and citations omitted); *Monti v. McKeon*, 600 F. Supp. 112, 114 (D. Conn. 1984), *aff'd*, 788 F.2d 1 (2d Cir.

1985) (table decision).  In other words, "[w]here a litigant is supported or assisted by another person, the [c]ourt may consider that person's ability to pay the filing fee." *Pierre v. City of Rochester*, No. 6:16-cv-06428 (CJS), 2018 WL 10072449, at *1 (W.D.N.Y. Dec. 13, 2018).

Additionally, IFP applications are typically regarded as insufficient when a plaintiff lists "zero" or "N/A" as the answer to every question on the form.  "Because no one can live on no income or assets, courts have held that affidavits that list zero for every category must be incomplete and, by extension, do not support *in forma pauperis* status." *Jessie C. v. Kijakazi*, No. 3:22-cv-00609 (SRU), 2022 WL 2068993, at *1 (D. Conn. May 2, 2022).  Thus, when a plaintiff "claims that he has no assets and receives no support from a spouse or from any other source but offers no explanation for how he survives day-to-day or how his monthly expenses are paid," his IFP application should be denied. *Pierre*, 2018 WL 10072449, at *1.

In this case, Mr. Chambers indicates in his IFP application that he receives no income or government benefits of any kind.  (ECF No. 14, at 3.)  He also indicates that he owns no assets and has no cash, either on hand or in a bank account.  (*Id.* at 4.)  Because generally no one can live on no income or assets, the Court is concerned about the completeness of Mr. Chambers' application. *See Jessie C.*, 2022 WL 2068993, at *1.

The Court is also concerned that Mr. Chambers has not filled out the renewed application "with the particularity, definiteness, and certainty that the law requires." *Andrea P. v. Kijakazi*, No. 3:22-cv-00354 (SRU), 2022 WL 1050326, at *1 (D. Conn. Mar. 14, 2022) (internal quotation marks omitted).  In his prior IFP application, Mr. Chambers stated that he lived with his father, who supported him by paying the rent on their home at 210 Farmington Avenue in Hartford, Connecticut.  (ECF No. 2, at 1, 3.)  In his renewed application, Mr. Chambers states under penalty of perjury that he is now "homeless" with "no permanent place of residence" and that he "visit[s]

family." (ECF No. 14, at 3.)  He no longer indicates that his father, or anyone else, supports him. But in the same application, Mr. Chambers lists his street address as 210 Farmington Avenue, Hartford, Connecticut – the same address that he said he shared with his father in his original IFP application. (*Id.* at 1.)  He also lists that address as his residence in his amended complaint. (Am. Compl., ECF No. 13, at 12.)  When a plaintiff's application raises obvious contradictions, he has not properly demonstrated an entitlement to IFP status. *See Andrea P*, 2022 WL 1050326, at *1 (holding that IFP application was insufficient when it failed to resolve contradictions with publicly-available real estate records).  For those reasons, I recommend that Mr. Chambers' second IFP application be denied.

## III.    THE SECOND INQUIRY – 1915(e)(2)(B) REVIEW

Although Mr. Chambers' IFP motion fails the first inquiry, I will nevertheless proceed to the second inquiry in the interest of judicial efficiency. *See, e.g.*, *Franklin v. Chenango Cnty. Pub. Defender's Office*, No. 3:18-cv-00865 (BKS) (DEP), 2018 WL 4288620, at *2 (N.D.N.Y. Sept. 7, 2018) (conducting 28 U.S.C. § 1915(e) analysis even though IFP motion denied).

### A.    General Principles of Review under 28 U.S.C. 1915

The same statute that authorizes courts to allow a qualifying plaintiff to begin his lawsuit without paying the fee also directs courts to review that plaintiff's complaint to ensure he is not abusing the privilege of filing a free lawsuit.  As noted above, that review asks whether the plaintiff's complaint, among other things, "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B).  A complaint "fails to state a claim on which relief may be granted" when it lacks "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendant fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Twombly*, 550 U.S. at 555–56. Conclusory allegations are insufficient. *Iqbal*, 556 U.S. at 678. If a complaint fails to state a claim, the court "shall dismiss the case." 28 U.S.C. § 1915(e)(2).

These and other pleading rules are applied liberally in favor of *pro se* plaintiffs like Mr. Chambers. "Since most *pro se* plaintiffs lack familiarity with the formalities of pleading requirements," courts must "construe *pro se* complaints liberally, applying a more flexible standard to evaluate their sufficiency than we would when reviewing a complaint submitted by counsel." *Lerman v. Bd. of Elections*, 232 F.3d 135, 139–40 (2d Cir. 2000). In other words, courts interpret *pro se* complaints "to raise the strongest arguments that they suggest." *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006) (internal quotation marks omitted). Because *pro se* litigants "cannot be expected to know all of the legal theories on which they might ultimately recover," a reviewing court's "imagination should be limited only by [the] factual allegations" when determining what legal claims the complaint suggests. *Phillips v. Girdich*, 408 F.3d 124, 130 (2d Cir. 2005). At the same time, "[e]ven a *pro se* plaintiff . . . must meet the standard of facial plausibility[.]" *McQuay v. Pelkey*, No. 3:16-cv-00436 (MPS), 2017 WL 2174403, at *2 (D. Conn. May 17, 2017).

### B. Subject Matter Jurisdiction

Before applying those principles to the complaint, the Court must first determine whether it has subject matter jurisdiction – that is, whether each of Mr. Chambers' claims is the sort of claim that the court is empowered to hear. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511

6

U.S. 375, 377 (1994).  Federal courts are courts of "limited jurisdiction," meaning that they cannot

hear just any case.  *Id.*  Leaving aside some others that are not relevant here, a federal court can

typically adjudicate only three types of claims:  (1) those that "aris[e] under the Constitution, laws,

or treaties of the United States" – so-called "federal question" jurisdiction under 28 U.S.C. § 1331;

(2) disputes between citizens of different states, where the amount in controversy exceeds $75,000

– "diversity jurisdiction" under 28 U.S.C. § 1332; and, under certain circumstances, (3) other

claims that are "so related" to an "original jurisdiction" claim that they "form part of the same case

or controversy under Article III of the United States Constitution" – "supplemental jurisdiction"

under 28 U.S.C. 1367(a).

When the plaintiff's complaint is not the sort of complaint that the court is empowered to

hear, dismissal is required.  Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it

lacks subject-matter jurisdiction, the court must dismiss the action."); *Yong Qin Luo v. Mikel*, 625

F.3d 772, 775 (2d Cir. 2010) (per curiam) ("Where jurisdiction is lacking . . . dismissal is

mandatory.") (internal quotation marks omitted).  Moreover, when subject matter jurisdiction is

lacking, the complaint must be dismissed even if it was drafted by a *pro se* plaintiff.  *See, e.g.*,

*Rene v. Citibank N.A.*, 32 F. Supp. 2d 539, 541 (E.D.N.Y. 1999); *cf. Makarova v. U.S.*, 201 F.3d

110, 113 (2d Cir. 2000) (placing the burden of proving subject matter jurisdiction on the *pro se*

plaintiff.  In other words, while *pro se* complaints are reviewed liberally, that liberality does not

stretch so far as to cause a court to hear a case that is outside its jurisdiction.  *Cf. Makarova*, 201

F.3d at 113; *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) (concluding that *pro se* status "does

not exempt a party from compliance with relevant rules of procedural and substantive law")

(internal quotation marks omitted).  When reviewed liberally, Mr. Chambers' amended complaint

seeks to invoke the court's diversity jurisdiction, federal question jurisdiction, and supplemental jurisdiction. Accordingly, the Court will discuss each in turn.

### 1.    Diversity jurisdiction

Under 28 U.S.C. § 1332, diversity jurisdiction does not exist unless two principal requirements have been met. The first is that the "matter in controversy" must exceed "the sum or value of $75,000, exclusive of interest and costs[.]" 28 U.S.C. § 1332(a). In the context of this case, the second is that the dispute must be "between . . . citizens of different States[.]" *Id.* To satisfy the second requirement in a multi-defendant case, it is not enough that one defendant be a citizen of a different state than the plaintiff. Rather, "all plaintiffs must be citizens of states diverse from those of all defendants." *Pa. Public School Emps. Retirement Sys. v. Morgan Stanley & Co., Inc.*, 772 F.3d 111, 118 (2d Cir. 2014) (citing *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553 (2005)). The party seeking to invoke diversity jurisdiction – in this case, Mr. Chambers – bears the burden to show that both requirements have been satisfied. *See Advani Enters., Inc. v. Underwriters at Lloyds*, 140 F.3d 157, 160 (2d Cir. 1998) ("The party seeking to invoke jurisdiction under 28 U.S.C. § 1332 bears the burden of demonstrating that the grounds for diversity exist and that diversity is complete.").

To show that a dispute is between citizens of different states, a plaintiff must allege different facts depending on the type of citizen involved. A corporation is "deemed to be a citizen of every State . . . by which it has been incorporated and of the State . . . where it has its principal place of business." 28 U.S.C. § 1332(c)(1). A natural person "is deemed a citizen of the state wherein he . . . is domiciled." *Universal Reins. Co. v. St. Paul Fire & Mar. Ins. Co.*, 224 F.3d 139, 141 (2d Cir. 2000) (citing *Linardos v. Fortuna*, 157 F.3d 945, 948 (2d Cir. 1998)). "Domicile has been described as the place where a person has 'his true fixed home and principal establishment,

and to which, whenever he is absent, he has the intention of returning.'" *Linardos*, 157 F.3d at 948 (quoting 13B C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 3612, at 526 (2d ed. 1984)).

As to the amount in controversy, the burden is on Mr. Chambers to demonstrate that his claims are worth more than $75,000. "A party invoking the jurisdiction of the federal court has the burden of proving that it appears to a 'reasonable probability' that the claim is in excess of the statutory jurisdictional amount." *Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 784 (2d Cir. 1994). When a plaintiff pleads that the amount in controversy exceeds $75,000, the Second Circuit recognizes "a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy." *Scherer v. Equitable Life Assurance Soc'y of U.S.*, 347 F.3d 394, 397 (2d Cir. 2003) (quoting *Wolde–Meskel v. Vocational Instruction Project Cmty. Servs., Inc.*, 166 F.3d 59, 63 (2d Cir.1999)) (internal quotation marks omitted). When a plaintiff does not specify the amount, a court determines it by examining the nature of the claims, the factual allegations, and the record. *Spicer v. Cap. One*, No. 3:23-cv-01141 (VAB), 2024 WL 4252661, at *9 (D. Conn. Sept. 20, 2024) ("In the absence of a specified amount, 'courts examine the nature of the claims, factual allegations within the pleadings, and the record outside the pleadings to determine the amount in controversy.'") (quoting *Burr ex rel. Burr v. Toyota Motor Credit Co.*, 478 F. Supp. 2d 432, 438 (S.D.N.Y. 2006)).

Where a complaint does not contain facts plausibly suggesting that the amount in controversy exceeds $75,000, however, the court is not required to presume that the conclusory allegations in the complaint are a good faith representation of the amount in controversy. *See Lapaglia v. Transamerica Cas. Ins. Co.*, 155 F. Supp. 3d 153, 155 (D. Conn. 2016) (concluding that *Twombly-Iqbal* plausibility threshold applies to allegations of amount in controversy); *Wood*

*v. Maguire Auto. LLC*, 508 F. App'x 65, 65–66 (2d Cir. 2013) (summary order) (affirming that bare and conclusory allegations as to the amount in controversy were "not entitled to a presumption of truth"). Thus, "[a] plaintiff seeking to invoke diversity jurisdiction cannot meet its burden of proof with mere conclusory allegations of indirect or speculative value." *Chavez v. Maker*, No. 1:18-cv-07965 (RA) (GWG), 2019 WL 4926348, at *4 (S.D.N.Y. Oct. 7, 2019) (internal quotation marks omitted), *report & recommendation adopted sub nom.*, *Chavez v. Wylie*, 2019 WL 6873806 (S.D.N.Y. Dec. 17, 2019), *appeal dismissed*, No. 20-383, 2020 WL 4332758 (2d Cir. May 28, 2020).

Here, construing the pleading liberally, the first of the two principal diversity-jurisdiction requirements is satisfied. Mr. Chambers alleges that he is a citizen of Connecticut. (ECF No. 13, at 12.) He also alleges that each of the defendants is a citizen of a state other than Connecticut.[1] (*Id.* at 4–11.)

However, Mr. Chambers has not alleged facts suggesting that his claims meet the $75,000 statutory jurisdictional amount for diversity jurisdiction. Indeed, Mr. Chambers' amended complaint does not allege any amount of money in controversy, nor does it describe his claimed injuries in any detail. (*See generally* ECF No. 13.) And even if the Court considered Mr. Chambers' demand for $100,000,000 in the original complaint (ECF No. 1, at 56), *see Spicer*, 2024 WL 4252661, at *9, his allegations – including that he is a "middle aged disabled man, who is at very high risk of being [more] injured by the defendants' PFAS," – are not enough to

---

[1]    The amended complaint's caption identifies the State of Connecticut as a defendant, but there are no claims against the state in the body of the pleading. Construing the complaint liberally on the diverse-citizenship prong of the diversity jurisdiction analysis, the Court concludes that Mr. Chambers did not intend to bring a claim against the state.

demonstrate that $100,000,000 is in controversy.  (ECF No. 13, at 39; *see also id.* at 19, 31, 37 (making conclusory statements that the defendants have caused harm to the plaintiff).)

Accordingly, Mr. Chambers has not invoked the court's diversity jurisdiction.  *Lapaglia*, 155 F. Supp. 3d at 154 ("Federal diversity jurisdiction requires an amount in controversy of at least $75,000.") (citing 28 U.S.C. 1332(a)).

### 2.    Federal question jurisdiction

Federal courts have federal question jurisdiction when the action "aris[es] under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  In order "to determine whether the claim arises under federal law, [courts] examine the 'well pleaded' allegations of the complaint."  *Bank of New York v. Consiglio*, No. 3:17-cv-01408 (CSH), 2017 WL 9480197, at *4 (D. Conn. Oct. 2, 2017) (quoting *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 6 (2003)), *report and recommendation adopted*, 2017 WL 4948069 (D. Conn. Nov. 1, 2017).

As discussed in Part C of this section, the Court construes Mr. Chambers' amended complaint to seek relief under one federal law – the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq*. ("ADA").  Although there are issues with the pleading of his ADA claim, the Court finds no jurisdictional defects and therefore concludes that it has federal question jurisdiction over that claim.  Nonetheless, for the reasons discussed below, I will recommend that the ADA claim be dismissed for failure to state a claim upon which relief may be granted.

### 3.    Supplemental jurisdiction

Finally, because Mr. Chambers' complaint contains state-law claims, the Court must assess whether it has supplemental jurisdiction over them; that is, whether the court can still hear the claims even though they do not invoke diversity jurisdiction or federal question jurisdiction.  28 U.S.C. § 1367 provides that, "in any civil action of which the district courts have original

jurisdiction, the district courts shall have supplemental jurisdiction over all claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Put differently, "a federal court has jurisdiction over an entire action, including state-law claims, whenever the federal-law claims and state-law claims in the case 'derive from a common nucleus of operative fact' and are 'such that a plaintiff would ordinarily be expected to try them all in one judicial proceeding.'" *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 349 (1988) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)) (brackets omitted). However, a federal court "may decline to exercise supplemental jurisdiction" under various circumstances, including when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); *Cohill*, 484 U.S. at 350 n.7 ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims."). As was the case with his original complaint, because I recommend dismissal of Mr. Chambers' federal-law claim, I will also recommend that Judge Dooley decline to exercise supplemental jurisdiction over his state-law claims.

### C.    Application of These Principles to Mr. Chambers' Claims

Construing the complaint liberally, Mr. Chambers appears to assert a claim under Title II of the ADA. (Am. Compl., ECF No. 13, at 38.) He also appears to assert the following state-law claims: (1) Intentional Infliction of Emotional Distress ("IIED") (ECF No. 13, at 37); (2) public nuisance (*Id.* at 42); (3) negligence (*Id.* at 44); (4) violation of the Connecticut Environmental Protection Act, Conn. Gen. Stat. §§ 22a-14 et seq. ("CEPA") (*Id.* at 46); and (5) violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §§ 42-110a et seq. ("CUTPA") (*Id.* at 53). For the reasons discussed below, I recommend that Judge Dooley dismiss the ADA claim

and decline to exercise supplemental jurisdiction over the remaining claims.  Alternatively, if Judge Dooley determines that the court has diversity jurisdiction, I recommend dismissal of the CUTPA claim for lack of standing and dismissal of the remaining claims for failure to state a claim upon which relief may be granted.

### 1.    ADA claim

The ADA protects against discrimination based upon disability with respect to, among other things, employment, public entities, public accommodations, and telecommunications.  42 U.S.C. §§ 12101 et seq.; *see Furst v. Connecticut*, No. 3:23-cv-00569 (KAD), 2023 WL 11852428, at *5 (D. Conn. June 12, 2023).  Mr. Chambers alleges that the "[d]efendants' PFAS contamination prevents" him from "enjoy[ing], without fear, the services available to him within the state of Connecticut" in violation of Title II of the ADA.  (Am. Compl., ECF No. 13, at 38.)  He further alleges that the presence of PFAS in Connecticut denies him "his right of the total enjoyment of life, liberty and happiness, and safety within his person[.]"  (*Id.*)  Even when read liberally, the amended complaint has failed to state an ADA claim.

To state a claim under Title II of the ADA, a plaintiff must plead facts that, if proven, would show that (1) he is a qualified individual with a disability; (2) the defendant is a public entity subject to the acts; and (3) he was denied the opportunity to participate in or benefit from the defendant's services, programs, or activities or the defendant otherwise discriminated against him by reason of his disability.  *Wright v. New York State Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016).  As in the original complaint, Mr. Chambers has not plausibly pled sufficient facts to establish the elements of a Title II claim.  The amended complaint makes no assertion that Mr. Chambers was denied the benefit of any public services, programs, or activities by reason of a disability.  (See ECF No. 13, at 38–41.)  *Chambers v. Connecticut*, No. 3:24-cv-01454 (KAD),

13

2024 WL 4819286, at *5 (D. Conn. Nov. 18, 2024).  Accordingly, the complaint fails to state a claim under Title II of the ADA.  *See, e.g.*, *Chavous v. Hous. Visions Unlimited, Inc.*, No. 5:22-cv-00811 (LEK) (TWD), 2022 WL 9967833, at *4 (N.D.N.Y. Oct. 17, 2022) (concluding that the plaintiff had failed to state a claim under Title II of the ADA because the complaint was, among other things, "devoid of factual allegations plausibly suggesting [the plaintiff] was unable to access public programs due to her disability"), *report and recommendation adopted*, 2023 WL 1775699 (N.D.N.Y. Feb. 6, 2023).

### 2.    Supplemental jurisdiction over state-law claims

Reviewing Mr. Chambers' complaint liberally, the remaining claims appear to be state-law claims for IIED, public nuisance, and negligence in addition to violations of CEPA and CUTPA. As discussed in Section III.B of this recommended ruling, the Court does not have diversity jurisdiction and, therefore, it can only handle state-law claims if (a) at least one federal claim survives, and (b) the state-law claims meet the requirements of supplemental jurisdiction. However, because I recommend that Judge Dooley dismiss the federal-law claim over which the court has original jurisdiction, I also recommend that she decline to exercise supplemental jurisdiction over the remaining state-law claims.  *See* 28 U.S.C. § 1367(c)(3).  When deciding whether to exercise supplemental jurisdiction, courts consider "the values of judicial economy, convenience, fairness, and comity[.]"  *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 117–18 (2d Cir. 2013) (citation omitted).  Having concluded that Mr. Chambers has failed to plausibly allege a viable federal claim, however, these values "militate against the exercise of supplemental jurisdiction."  *Kulmann v. Biolo*, No. 3:24-cv-01077 (MPS), 2024 WL 3988255, at *6 (D. Conn. Aug. 29, 2024).  Accordingly, I recommend that Judge Dooley decline to exercise supplemental jurisdiction over Mr. Chambers' state-law claims.

### 3.    Review of state-law claims under 28 U.S.C. § 1915(e)(2)(B)

Although the Court finds that Mr. Chambers has not invoked the court's diversity jurisdiction and recommends that Judge Dooley decline to exercise supplemental jurisdiction over the state-law claims, I will nevertheless consider whether Mr. Chambers' amended complaint "fails to state a claim" with respect to his state-law claims.  *See Sullivan v. Harris*, No. 3:24-cv-01578 (KAD), 2024 WL 4819285, at *6 (D. Conn. Nov. 18, 2024) (analyzing whether a complaint failed to state a claim even after determining that the complaint must be dismissed for lack of subject matter jurisdiction).  I conclude that, even if the court had subject matter jurisdiction, I would recommend (1) dismissal of the CUTPA claim for lack of standing and (2) dismissal of all other state-law claims for failure to state a claim.

### i.    CUTPA

First, Mr. Chambers does not have standing to bring his CUTPA claim because he does not fall within the class of persons that CUTPA is intended to protect.  *See Gersich v. Enter. Rent A Car*, No. 3:95-cv-01053 (AHN), 1995 WL 904917, at *5 (D. Conn. Nov. 20, 1995) (finding that the plaintiffs were "not within the class of claimants which CUTPA intended to protect" because they were not "consumers or competitors of [the defendant] or other businesspersons affected by [the defendant's] conduct").  "[S]tanding under CUTPA requires that the plaintiff have 'some sort of business relationship' with the defendant business 'such that he suffers injury as either a consumer or competitor of the defendant or as some other businessperson affected by its unfair or deceptive acts.'"  *Aviles v. Wayside Auto Body, Inc.*, 49 F. Supp. 3d 216, 232 (D. Conn. 2014) (quoting *Gersich*, 1995 WL 904917, at *5.); *Valle v. Green Tree Servicing, LLC*, No. 3:16-cv-00277 (SRU), 2017 WL 1053848, at *7 (D. Conn. Mar. 20, 2017) (dismissing for lack of standing the plaintiff's CUTPA claim because he did not "fall into any of the categories required for

standing under CUTPA (consumer, competitor, or otherwise injured businessperson)"); *see also In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 379 F. Supp. 2d 348, 385 (S.D.N.Y. 2005) ("The Connecticut Supreme Court has made clear that a consumer relationship is not required under CUTPA; a competitor or 'other business person' can maintain a claim without showing consumer injury.") (citing *Larsen Chelsey Realty Co. v. Larsen*, 232 Conn. 480, 497 (1995)).

In this case, Mr. Chambers does not allege that he is consumer or competitor of the defendants or that he is some other businessperson affected by their unfair or deceptive acts. (*See* ECF No. 13, at 53–55.) Accordingly, he does not have standing to bring his CUTPA claim.

## ii.    IIED

Mr. Chambers' amended complaint also fails to state a claim for IIED. "To prevail on an intentional infliction of emotional distress claim in Connecticut, a plaintiff must establish four elements: '(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe.'" *Apatow v. Town of Stratford*, 651 F. Supp. 3d 573, 591 (D. Conn. 2023) (quoting *Watts v. Chittenden*, 301 Conn. 575, 586 (2011)). Here, Mr. Chambers alleges that the "[d]efendants' actions towards plaintiff . . . have been extreme, outrageous, intentional, and reckless, and [have] caused plaintiff severe emotional distress and mental trauma, and bodily harm." (ECF No. 13, at 37.) He does not say what these actions are or which of the defendants committed them. Nor does he plead any facts concerning the distress, trauma, and bodily harm that he is allegedly experiencing. Such cursory allegations of emotional distress and conduct that was extreme or outrageous are not enough to support his

16

claim. *Iqbal*, 556 U.S. at 678 (2009) (holding that conclusory allegations are insufficient). The IIED claim therefore fails.

### iii.    Public nuisance

Mr. Chambers' public nuisance claim also fails. "[A] plaintiff must prove four elements to succeed in a nuisance cause of action: (1) the condition complained of had a natural tendency to create danger and inflict injury upon a person or property; (2) the danger created was a continuing one; (3) the use of the land was unreasonable or unlawful; [and] (4) the existence of the nuisance was the proximate cause of the plaintiffs' injuries and damages." *Pestey v. Cushman*, 259 Conn. 345, 355 (2002) (internal quotation marks omitted). Moreover, it is uniformly held that "a private individual has no action for the invasion of the purely public right, unless his damage is in some way to be distinguished from that sustained by other members of the general public. It is not enough that he suffers the same inconvenience or is exposed to the same threatened injury as everyone else." *Burton v. Dominion Nuclear Connecticut, Inc.*, 300 Conn. 542, 562 (2011) (citation and internal quotation marks omitted).

In this case, the harm alleged by Mr. Chambers – that is, the defendants "interfere[d] with [his] health, safety, and welfare . . . and obstruct[ed] [his] free use and comfortable enjoyment of Connecticut's natural resources" – is not distinguishable from harm that may have been sustained by the general public. (ECF No. 13, at 42.) And even if the alleged harm was distinguishable, Mr. Chambers' conclusory statements are not enough to state a claim for public nuisance. *See Iqbal*, 556 U.S. at 678. His public nuisance claim should therefore be dismissed for failure to state a claim.

### iv.    Negligence

Mr. Chambers' negligence claim similarly fails to state a claim.    "Negligence is the violation of a legal duty which one party owes to another." *Kats v. United States*, No. 3:22-cv-00471 (VDO), 2023 WL 8270365, at *2 (D. Conn. Nov. 30, 2023) (quotation marks omitted). "The essential elements of a cause of action in negligence under Connecticut law are duty; breach of that duty; causation; and actual injury." *Id.* (citing *Osborn v. City of Waterbury*, 333 Conn. 816, 825 (2019)).

Here, Mr. Chambers' complaint only contains conclusory statements as to the duty that the defendants owed him and the breach of that alleged duty.  (ECF No. 13, at 44.)  Indeed, he states only that the "[d]efendants owed a duty of care to" him and that they "breached that duty of care by designing, manufacturing, marketing, distributing, and selling . . . their PFAS products." (*Id.*) Moreover, the complaint contains no statements at all as to causation and damages.  (*See generally id.*)  Accordingly, the amended complaint fails to state a negligence claim.

### v.    CEPA

Finally, the facts set forth in the complaint also do not support Mr. Chambers' CEPA claim. Although "any person . . . may maintain an action . . . for the protection of the public trust in the air, water, and other natural resources of the state," Conn. Gen. Stat. § 22a-16, a complaint "must set forth facts to support an inference that unreasonable pollution, impairment, or destruction of a natural resource will probably result from the challenged activities unless remedial measures are taken." *Burton v. Comm'r of Env't Prot.*, 291 Conn. 789, 804 (2009).

In this case, Mr. Chambers sets forth no such facts.  He claims only that "[a]s a direct and proximate result of defendants' actions and omissions, plaintiff's living environment and the state of Connecticut natural resources have been unreasonably polluted, impaired, and destroyed."

(ECF No. 13, at 46–47.)  Mr. Chambers does not, for example, state what the actions and omissions might be, nor which defendant or defendants allegedly committed them.  (Id.)  Accordingly, Mr. Chambers does not state a valid claim under CEPA.

## V.    CONCLUSION

In sum, I recommend that Judge Dooley deny Mr. Chambers' renewed motion for leave to proceed *in forma pauperis*.  I also recommend that Judge Dooley (1) dismiss the ADA claim for failure to state a claim and (2) decline to exercise supplemental jurisdiction over the remaining state-law claims.  Alternatively, if Judge Dooley concludes that Mr. Chambers has invoked diversity jurisdiction, I recommend (1) dismissal of the Connecticut Unfair Trade Practices Act claim for lack of standing and (2) dismissal of all other claims for failure to state a claim.

This is a recommended ruling by a magistrate judge.  Fed. R. Civ. P. 72(b)(1); D. Conn. L. Civ. R. 72.1(C).  **If the plaintiff wishes to object to my recommendation, he must file that objection with the Clerk of the Court by May 26, 2025.**  *See* Fed. R. Civ. P. 72(b)(2) (stating that objections to magistrate judge recommendations shall be filed within fourteen days); D. Conn. L. Civ. R. 72.2(a) (allowing five additional days for persons who, like Mr. Chambers, will receive the recommendation from the Clerk of the Court via mail); Fed. R. Civ. P. 6(a)(1)(C) (stating that, when a deadline would fall on a Sunday, "the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday").  If he fails to file a timely objection, his failure "operates as a waiver of any further judicial review[.]" *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).  In particular, failure to file a timely objection operates as a waiver of the right to seek appellate review in the Court of Appeals. *Id.*; *see also* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. 6; *see also Impala v. U.S. Dep't of Justice*, 670 F. App'x 32 (2d Cir. 2016) (summary order).

*/s/ Thomas O. Farrish*

Hon. Thomas O. Farrish
United States Magistrate Judge